IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHARLOTTE CUE-LIPIN,

   Plaintiff,

    v.

CALLANWOLDE FOUNDATION,
INC.,

   Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-2408-TWT

**OPINION AND ORDER**

    The Plaintiff contends she was denied overtime pay while she served as a rental manager for the Defendant. The Defendant argues it was not required to pay the Plaintiff overtime wages under the administrative employee exception and that it had no knowledge that the Defendant actually worked overtime hours. Because the Plaintiff served an essential function and exercised discretion as a rental manager, the Court concludes she was not improperly denied overtime pay.

### I. Background

    The Callanwolde Foundation, Inc., the Defendant, is a non-profit organization that generates half of its revenue through fundraising and the rest of its revenue through fee-based services, including renting its property for private events. To that end Callanwolde created a Rental Department which is run by its sole employee, the

Rental Manager. Plaintiff Charlotte Cue-Lipin was hired as the Rental Manager in October 2011. She had previously worked for Callanwolde as an office receptionist. (See Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J., at ¶¶ 1-3, 11).

As Rental Manager, the Plaintiff was charged with renting the property in order to maximize revenue. (See Cue-Lipin Dep. at 191). Her duties included communicating with clients, showing the rental space to potential clients, negotiating and drafting rental contracts, and overseeing the marketing and advertising of the rental space. (See id. Ex. 2). The Plaintiff was expected to satisfy rental clients to the fullest extent possible and often continued communicating with clients up through the events.

The Plaintiff was terminated on June 13, 2013, because, according to Callanwolde, clients had complained about the Plaintiff's failure to communicate with them adequately. The Plaintiff filed her complaint on July 19, 2013, with a single count for violations of the Fair Labor Standards Act (FLSA). The Defendant filed its motion for summary judgment on November 22, 2013. The Plaintiff filed motions to compel and to extend her time to respond to summary judgment, which this Court denied on January 16, 2014.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

## III.  Discussion

The Defendant argues it is entitled to summary judgment because there is no genuine issue of material fact that the Plaintiff was exempted from the FLSA overtime requirement as an administrative employee while she served as Rental Manager. In general, the FLSA overtime requirement does not apply to employees working "in a bona fide … administrative … capacity." 29 U.S.C. § 213(a)(1). This administrative exception applies when an employee is:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week…;

> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200. The parties do not dispute that Cue-Lipin was paid over $455 a week as Rental Manager. Accordingly, whether she is entitled to the administrative exception depends on whether her primary duties were directly related to the general business of Callanwolde and whether they required her to exercise her judgment on matters of significance.

The Plaintiff's primary duty was to maximize the revenue generated by Callanwolde's rental space.

> The term "primary duty" means the principal, main, major or most important duty that the employee performs… Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." 29 C.F.R. § 541.700(b). Here, all rentals of Callanwolde property were handled by the Plaintiff. (See Cue-Lipin Dep. at 103). All communications from potential vendors and potential renters were sent directly to the Plaintiff. (Id. at 69-71, 74-76). The

Plaintiff spent approximately 90% of her time doing tasks associated with renting the Defendant's event spaces to the Defendant's customers. (Cue-Lipin Dep. at 190-91).

The Plaintiff's primary duty related to the Defendant's general business operations. For an employee's work to be considered directly related to general business operations, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). Examples of work related to a general business operation include:

> work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b). Here, the Plaintiff acted as Callanwolde for all customers seeking to rent the Callanwolde property. The Plaintiff agreed in her deposition that it was critical for her to be available to customers. (Cue-Lipin Dep. at 170). She marketed and advertised the rental space and occasionally made advertising decisions without input from the executive director. (See id. at 147-48). She also represented Callanwolde at wedding industry events and networked with wedding professionals

on behalf of Callanwolde. The Plaintiff was not subject to constant supervision: she oversaw the entire Rental Department and the Defendant's executive director relied on the Plaintiff to run the department herself. (See Johnson Dep. at 11). The Court concludes that, rather than simply selling rental space as if it were a retail product, the Plaintiff played a crucial role in generating revenue for the Defendant, and her duties were therefore directly related to the foundation's general operations.

Likewise, the Court concludes that Cue-Lipin exercised her discretion and independent judgment when performing her primary duty at Callanwolde. In overseeing the Rental Department, the Plaintiff "perform[ed] work that affect[ed] business operations to a substantial degree, even if the employee's assignments [we]re related to operation of a particular segment of the business." 29 C.F.R. § 541.202. As noted, Callanwolde relies on rental revenue generated by the Rental Department to add to the foundation's fundraising efforts. Next, by seeking out customers, marketing to them, and signing contracts with them, the Plaintiff had the authority "to commit the employer in matters that have significant financial impact" because Callanwolde's funding was related to its rental income. She also had the authority "to negotiate and bind the company on significant matters" by choosing and contracting with clients. Id. Even though the Plaintiff was mostly bound by a set pricing schedule, she had the authority to offer some discounts to customers who paid upfront. (Cue-Lipin Decl. ¶

29). Finally, in overseeing the marketing and advertising for the rental space, as well as helping to develop rental policies, the Plaintiff had the "authority to formulate, affect, … [and] implement… operating practices." Id. Her own description of her job duties includes not only creating a brochure and an online presence for Callanwolde, but also consulting with the executive director to establish rental rates and policies. (See Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Ex. G). Although Cue-Lipin used tour scripts provided by her predecessor,[1] the rental contracts she provided were forms she filled in. Although she was mostly confined by a set pricing schedule, the Court concludes that Cue-Lipin exercised her discretion in performing her primary duties at Callanwolde.

In Hines v. State Room, Inc., 665 F.3d 235 (1st Cir. 2011), the First Circuit affirmed that several employees whose jobs were similar to that of the Plaintiff were administratively exempted from the FLSA overtime requirement. The court found that the plaintiffs exercised independent judgment and discretion when acting as sales managers for the defendant's banquet space. The plaintiffs were charged with renting the banquet space by developing relationships with clients and potential clients,

---

[1] Although her predecessor provided this script to the Plaintiff, it is unclear how faithfully the Plaintiff followed it or how faithfully the Plaintiff was expected to follow it. In her deposition, the Plaintiff merely stated that her predecessor "took me on a tour and told me what she would tell any client." In response to the next question, the Plaintiff agreed that she then modified the speech in her own way. (Cue-Lipin Dep. at 59).

offering a range of customizable event options, and maintaining contact with clients through the banquet events. The court stated that the plaintiffs' primary duty was "engaging potential clients and assisting them in selecting from various options from the employers' offerings." Id. at 245. Although the plaintiffs were constrained by a company handbook, the rules and guidelines in the handbook were not "so specific as to cabin the judgment that the plaintiffs were required to exercise in engaging with clients and prospective clients." Id. The court found that the plaintiffs exercised judgment even though they required management approval before completing a rental agreement. Id. at 246.

Here, too, the Plaintiff exercised discretion and independent judgment in selling the rental space despite constraints imposed on her by the Defendant. The Plaintiff's own description of her job requires her to communicate with potential clients on dates and pricing, to give tours to potential clients, to discuss photo shoot logistics with clients, and to attend final walkthroughs with clients before an event. (See Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Ex. G). She also drafted contracts for the clients. (Id.) Although the Plaintiff may have had less flexibility in fashioning the events than the plaintiffs in Hines, the Plaintiff worked with the executive director to establish rental rates, rental policies, and basic event items such as choosing ceiling drapery vendors. (Id.) Further, the Plaintiff would solicit new professional

relationships for Callanwolde, and maintain Callanwolde's online presence. (Id.) In developing client and vendor relationships and marketing the rental property, the Plaintiff was required to exercise at least the amount of discretion as the employees in Hines. Accordingly, the Plaintiff's role at Callanwolde required her to exercise discretion in constantly communicating with clients and potential clients and working with other managers in developing policies and client relationships. Thus, the Plaintiff was exempt from the overtime requirements of the FLSA as an administrative employee, and the Defendant's motion for summary judgment should be granted.

### IV. Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 34] is GRANTED.

SO ORDERED, this 14 day of February, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge